Fuller *v.* Fenner.

---

## RUTH FULLER *vs.* J. L. FENNER.

For words imputing a want of chastity to an unmarried female dependent on her labor for her support, an action will lie, where the special damages alleged are illness, with a consequent inability to labor and earn her living. The loss of the plaintiff's earnings, under such circumstances, is a direct pecuniary loss.

APPEAL by the defendant from a judgment rendered against him at a special term, upon the verdict of a jury.  The cause was tried at the Onondaga circuit in February, 1853, before W. F. ALLEN, justice.

*Le Roy Morgan,* for the plaintiff.

*B. Davis Noxon,* for the defendant.

*By the Court,* GRIDLEY, J.  This was an action for slander, by words imputing a want of chastity to the plaintiff, an unmarried female dependent on her labor for her support; in which the special damages alleged were, illness, with a consequent inability to labor and earn her living.  After the plaintiff had closed her case, the counsel of the defendant moved the court for a nonsuit, on these grounds : 1. That no special damage of a pecuniary nature had been proved.  2. If special damages had been proved, that they were not shown to have been the natural and immediate consequence of the words spoken.  3. That the plaintiff had not proved that the special damage was exclusively

the consequence of the words spoken. The justice denied the motion for a nonsuit; and the jury, after being addressed by the respective counsel and charged by the court, rendered a verdict for the plaintiff, for $800. A motion is now made for a new trial, on the grounds, 1. That the nonsuit should have been granted; 2. That the damages were excessive.

I. Did the justice err in refusing to nonsuit the plaintiff, for either of the reasons assigned on the motion? The plaintiff was an adult unmarried female, dependent on her labor, for her support. She was a tailoress by trade, and worked at making men's garments, as was proved on the trial. Now granting that it is not enough, that the special damage arises out of distress of mind and pain of body, occasioned by physical illness produced by the speaking of the words, yet when that illness occasions an incapacity to labor, and thus deprives the plaintiff of the *pecuniary gains* to be derived therefrom, I know of no case that holds such damages to be insufficient to sustain the action. On the contrary, I understand all the cases on the subject, as well as the principle which lies at the foundation of the action, to admit the validity of this ground of action. *Moore* v. *Meagher*, (1 *Taunt.* 38;) *Bradt* v. *Towsley*, (13 *Wend.* 253.) *Olmsted* v. *Miller*, (1 *Id.* 506;) *Williams* v. *Hill*, (19 *Id.* 305;) and *Beach* v. *Ranney*, (2 *Hill*, 314,) do not overrule, nor are they at all in conflict with this doctrine; but on the contrary they affirm it, and limit the application of the above authorities to cases embracing the ground of action arising out of the facts appearing on the trial of this cause. The caution which is recommended in the later cases is for the purpose of guarding against the *loose and uncertain* proof of the material facts; and not to warrant the rejection or disregard of the facts themselves when duly proved. Now let us apply this principle to the case under consideration.

We have already seen that the plaintiff pursued the business of a tailoress, and was dependent on her earnings for her daily support and sustenance. The loss of her earnings was therefore a direct pecuniary loss. Consequently it was only necessary to prove, in addition, that her sickness was caused by the speak-

Fuller *v*. Fenner.

ing of the words; and that her illness incapacitated her for the pursuit of her business, and thus deprived her of her accustomed earnings; or in other words, of the means of actual subsistence.

The charge itself was of an exceedingly gross and cruel character. It was uttered in the presence of her father, of her sister, who was the defendant's wife, and of the defendant's children. It accused her of criminal intercourse with the defendant himself, on various occasions and at different places, and under the most revolting circumstances. The natural effect of such a charge, so made, on the feelings of a female of the ordinary sensibilities of her sex, must have been of a very exciting and agitating character; which effect would naturally be followed, in a person of delicate health, as the plaintiff was proved to be, by a corresponding depression. Accordingly we find that the first effect was anger and grief. The plaintiff did not usually enjoy very perfect health; though she was able to walk to the defendant's house, on the evening in question, with her father, to expostulate with the defendant for his treatment of his wife. The father of the plaintiff testifies to the effect of the uttering of the words, on her, in these words. "I returned home with. the plaintiff. It [the slanderous charge] seemed to affect her pretty bad. She walked rather slow. She was not able *to do much of any thing for four or five days.* She was in low spirits." The witness ascribes the consequences directly to the speaking of the slanderous words. This was a natural and probable cause. There was an absence of any other cause, in the proof. The jury have by their verdict found the uttering of the words to be the cause of the plaintiff's illness. The plaintiff's brother testified that she had a coat, which she was making for him, at the time of this occurrence. "I called for it; it was not done; *she was ill and could not finish it.* I purchased another coat, and left that till she recovered." (This was on Sunday after the uttering of the words, which was on Friday.) "She was ill in bed, and sat up about one hour in the day, and seemed much agitated." Before this she had been in her usual health, as far as the witness knew. It does not appear (as was contended on the argument) that the coat was brought there about five weeks

before, and the plaintiff had been too ill to make it, all that time. Though the brother says *he* had not seen her in about five weeks, yet he may have *sent* the coat to be made, the day before the charge was uttered. And she may also have omitted to make it before, by reason of previous engagements. There is no evidence how long she had the coat in her possession; and her father's testimony is positive that she had been in the enjoyment of her usual health up to the speaking of the words. That she was sick, and lost the earnings of her trade during her illness, is proved by evidence that is uncontradicted. The only question, therefore, on which there can be any doubt, is, whether the illness was caused by the speaking of the words. That has been found by the jury; but the objection is that there was not *any* evidence on that point to be submitted to the jury; and that a nonsuit should have been granted. We think otherwise. We have already expressed the opinion that the nature of the charge, the rude and cruel manner in which it was made, the immediate effect upon the plaintiff, the reaction that took place on the way home from the defendant's house, all concur to show it very probable that the illness that immediately succeeded was the effect of these exciting events, upon an overwrought and feeble frame. At all events, there was *some evidence*, and enough to be submitted to the jury for them to pass upon, in relation to this as well as all the other questions involved in the case. We are aware that when a cause is submitted to the jury, it should be submitted under proper instructions. The disease is so easily counterfeited, in some cases—in others it may arise from other causes, unconnected with the slander—that juries should be charged to be very cautious in finding a verdict for the plaintiff, on slight grounds. We are bound to believe that the charge was in all respects unobjectionable, as no complaint is made on that ground. The question was one properly for the jury to dispose of, and they have found for the plaintiff.

II. The motion has also been argued on the ground of excessive damages. Not much reliance is placed on that ground, and we think there should not be. The defendant was proved to be worth eight or nine thousand dollars. The charge itself, under

the circumstances, could scarcely have been more atrocious.   The damages therefore were within the discretion of the jury, and were not so exorbitant as to require us to interfere with their finding, on the ground that they were influenced by improper motives.

[JEFFERSON GENERAL TERM, July 4 1853.   *Gridley, W. F. Allen, Hubbard* and *Pratt*, Justices.]