TERWILLIGER *v.* WANDS.

The special damage to support an action for defamatory words, not actionable in themselves, must result from injury to the plaintiff's reputation, which affects the conduct of others towards him. His mental distress, physical illness and inability to labor, occasioned by the aspersion, are not such natural and legal consequences of the words spoken, as to give an action.

The cases of *Bradt* v. *Towsley* (13 *Wend.*, 253) and *Fuller* v. *Fenner* (16 *Barb.*, 333), overruled.

APPEAL from the Supreme Court. The action was for slander, in charging that the plaintiff had been guilty of lewd and unchaste conduct, alleging special damage.

At the trial before Justice PRATT and a jury, at a Circuit Court in Onondaga county, in October, 1854, the plaintiff proved by La Fayette Wands that in June, 1852, the defendant asked the witness what the plaintiff was running to Mrs. Fuller's so much for: that he knew he went there

for no good purpose, and Mrs. Fuller was a bad woman; that the plaintiff had a regular beaten path across his land to Fuller's; and the defendant said to him he went there for no other purpose than to have intercourse with Mrs. Fuller; and that once previously, the defendant told the witness that the plaintiff would do all he could to keep the husband of Mrs. Fuller in the penitentiary so that he could have free access there.

The plaintiff next proved by John S. Neiper that in the beginning of May, 1852, he called at the defendant's house, and the defendant spoke about the going to Fuller's, and asked what business the plaintiff had in going there so much; he said there was bad work going on there; that Mrs. Fuller was a bad woman. The witness further testified that he married the sister of Mrs. Fuller, and was an intimate friend of the plaintiff; and that in May he communicated to the plaintiff what the defendant had told him. The plaintiff further proved by this witness that in June, 1852, he was hoeing corn with the plaintiff, and at that time was talking over what La Fayette Wands had said defendant told him; the story of what La Fayette Wands had said defendant told him was all over the country; that the witness told the plaintiff what the report was, that he went to Mrs. Fuller's for the purpose of having connection with her. The plaintiff felt bad, threw down his hoe and left the field; that the plaintiff had always worked with the witness before that, and he had been in middling good health; that the plaintiff after that appeared melancholy, and looked bad, pale and sick; his appetite was poor and he had to hire more help.

The plaintiff also proved by Gland C. Wands, that the defendant, in February or March, 1852, said to him that the plaintiff was known to go to Fuller's several times a day; he had a path through the woods there, and went there for no good purpose. Other witnesses testified to similar imputations by the defendant at other times, but

there was no proof that what the defendant said to them, or to Gland C. Wands, was communicated to the plaintiff.

Nancy Harpburn, a daughter of the plaintiff, testified that she heard the report that La Fayette Wands had circulated the 1st of May, 1852; that she remembered when Neiper hoed corn there, of plaintiff's getting worse, going into the house and to bed; that she remarked a great difference in his appearance, not resting at night; did not discover any other difference; he did not pursue his work as formerly; this debility commenced in June; heard of Wands' report in May or June; first heard of its coming through La Fayette Wands in June, about the middle of hoeing time, and then remarked a difference in his appearance; he grew worse all through the summer. On cross-examination she testified that she heard some slight reports through the winter that he was very intimate, and more than was proper, with Mrs. Fuller, and had frequent conversations with her father about it; that she knew that Mr. Fuller made such charges during the winter and summer; and that she talked with her father about what Fuller had said; that a lady told her in May it was reported Fuller had caught her father there, and she told her father in June; that Dr. Price prescribed for the plaintiff in June and July.

The plaintiff proved by Dr. Price that he called to see the plaintiff as a patient in May or June, 1852; and that plaintiff was debilitated with what appeared to be mental difficulty; that he judged from what plaintiff's friends said the plaintiff's health was impaired so that he could not labor on his farm; that the plaintiff was not out of health through the summer.

George Terwilliger, a son of the plaintiff, testified that he saw the plaintiff frequently along in May and June, 1852; that his health in the winter was good, and began to decline about the first of May, and became worse after that, and during the summer was entirely prostrated; that he became worse and unable to attend to his business, and

neglected it; his crops were neglected and fences down; his corn suffered for want of hoeing; that the plaintiff appeared like a person worn down by sickness in May, June and July; he was a farmer and his business required his personal attention every day.

The plaintiff having rested the defendant moved for a nonsuit on the grounds: 'First. That the words were not spoken by Wands to the plaintiff, nor authorized by him to be communicated to the plaintiff; Second. That there was no evidence that the damages, if any, proved, were occasioned by the speaking of the words by the defendant. The court sustained the motion, and judgment having been entered against the plaintiff he appealed. At the general term in the fifth district the judgment was affirmed, and from the latter judgment an appeal was taken to this court.

*B. D. Noxon,* for the appellant.

*Leroy Morgan* for the respondent.

STRONG, J. The words spoken by the defendant not being actionable of themselves, it was necessary in order to maintain the action to prove that they occasioned special damages to the plaintiff. The special damages must have been the natural, immediate and legal consequence of the words. ( *Stark. on Sland.,* by *Wend.,* 2d ed., 203; 2 *id.,* 62, 64; *Beach* v. *Ranney,* 2 *Hill,* 309; *Crain* v. *Petrie,* 6 *id.,* 523; *Kendall* v. *Stone,* 1 *Seld.,* 14.) Where words are spoken to one person and he repeats them to another, in consequence of which the party of whom they are spoken sustains damages, the repetition is, as a general rule, a wrongful act, rendering the person repeating them liable in like manner as if he alone had uttered them. The special damages in such a case are not a natural, legal consequence of the first speaking of the words, but of the wrongful act of repeating them, and would not have occurred but for the

repetition; and the party who repeats them is alone liable for the damages. (*Ward* v. *Weeks*, 7 *Bing.*, 211; *Hastings* v. *Palmer*, 20 *Wend.*, 225; *Keenholts* v. *Becker*, 3 *Denio*, 346; *Stevens* v. *Hartwell*, 11 *Metc.*, 542.) These views dispose of this case as to the right of action in respect to all the words but those spoken to the witness Neiper, as none of them were spoken by the defendant in the presence of the plaintiff, or communicated to the plaintiff by the witnesses to whom they were spoken by the defendant; and there is no proof as to the circumstances under which they were repeated by those witnesses. In the absence of evidence of those circumstances, the general rule, that a repetition of slanderous words is wrongful, applies; hence any damages which resulted from repeating them are a consequence of that wrong, and not a natural, immediate and legal effect of the original speaking of the words by the defendant.

In regard to the words spoken by the defendant to Neiper, it is proved that they were communicated by the latter to the plaintiff, and that Neiper was at the time an intimate friend of the plaintiff. This friendly relation, it is claimed on the part of the plaintiff, rendered the communication of Neiper to him proper; and, being so, it is insisted that the defendant is responsible for the consequences, in the same manner as if the words had been spoken directly to the plaintiff. There are several cases in which it is suggested that circumstances may exist which will justify the repetition of slanderous words, and that when repeated under such circumstances, and damages ensue, the first speaker may be liable in like manner as he would be if the injury had arisen from the words without the repetition. (*Ward* v. *Weeks*, 7 *Bing.*, 211; *Keenholts* v. *Becker*, 3 *Denio*, 346; *Olmsted* v. *Brown*, 12 *Barb.*, 657; *McPherson* v. *Daniels*, 10 *Barn. & Cress.*, 263.) Occasions may doubtless occur where the communication of slanderous words by a person who heard them will be innocent; and it is certainly reasonable that when repeated on such an occasion and damages result, the

Terwilliger *v.* Wands.

first speaker should be held responsible for the damages, as flowing directly and naturally from his own wrong. It is not necessary in the present case to decide whether the proposition is law; for, assuming it to be so, and that illness and inability to labor constitute such special damages as will support an action, the evidence in this case wholly fails to show that the damages were a consequence of the words spoken by the defendant to Neiper. The proof is that they were mainly the result of the repetition of the words spoken to the witness Wands, and reports of other persons. It was not until a considerable time after the plaintiff was informed by Neiper what the defendant had said to the latter that he began to be ill; and his illness commenced immediately after the communication to him of what had been said by La Fayette Wands. At that time the plaintiff had been informed of charges made by Fuller to the same effect, and it is a fair conclusion upon the proof that he then knew what the witness Wands says was the fact, that "the story was all over the country." Under these circumstances it is impossible to conclude that what the defendant stated to Neiper produced the damages. (1 *Stark. on Sland.,* 205; *Vicars* v. *Wilcocks,* 8 *East,* 1; *Crain* v. *Petrie,* 6 *Hill,* 522.)

But there is another ground upon which the judgment must be affirmed. The special damages relied upon are not of such a nature as will support the action. The action for slander is given by the law as a remedy for "injuries affecting a man's reputation or good name by malicious, scandalous and slanderous words, tending to his damage and derogation." (3 *Bl. Com.,* 123; *Stark. on Sland., Prelim. Obs.,* 22–29; 1 *id.,* 17, 18.) · It is injuries affecting the reputation only which are the subject of the action. In the case of slanderous words actionable *per se,* the law, from their natural and immediate tendency to produce injury, adjudges them to be injurious, though no special loss or damage can be proved. "But with regard to words that do not apparently and upon the face of them import such defa-

mation as will of course be injurious, it is necessary that the plaintiff should aver some particular damage to have happened." (3 *Bl. Com.*, 124.) As to what constitutes special damages, Starkie mentions the loss of a marriage, loss of hospitable gratuitous entertainment, preventing a servant or bailiff from getting a place, the loss of customers by a tradesman; and says that in general whenever a person is prevented by the slander from receiving that which would otherwise be conferred upon him, though gratuitously, it is sufficient. ( 1 *Stark. on Sland.*, 195, 202; *Cooks Law of Def.*, 22–24.) In *Olmsted* v. *Miller* ( 1 *Wend.*, 506), it was held that the refusal of civil entertainment at a public house was sufficient special damage. So in *Williams* v. *Hill*, (19 *Wend.*, 305 ), was the fact that the plaintiff was turned away from the house of her uncle and charged not to return until she had cleared up her character. So in *Beach* v. *Ranney*, was the circumstance that persons, who had been in the habit of doing so, refused longer to provide fuel, clothing, &c. ( 2 *Stark. on Ev.*, 872, 873.) These instances are sufficient to illustrate the kind of special damage that must result from defamatory words not otherwise actionable to make them so; they are damages produced by, or through, impairing the reputation.

It would be highly impolitic to hold all language, wounding the feelings and affecting unfavorably the health and ability to labor, of another, a ground of action; for that would be to make the right of action depend often upon whether the sensibilities of a person spoken of are easily excited or otherwise; his strength of mind to disregard abusive, insulting remarks concerning him; and his physical strength and ability to bear them. Words which would make hardly an impression on most persons, and would be thought by them, and should be by all, undeserving of notice, might be exceedingly painful to some, occasioning sickness and an interruption of ability to attend to their ordinary avocations. There must be some limit to liability for words not actionable *per*

Terwilliger *v.* Wands.

*se,* both as to the words and the kind of damages; and a clear and wise one has been fixed by the law. The words must be defamatory in their nature ; and must in fact disparage the character ; and this disparagement must be evidenced by some positive loss arising therefrom directly and legiti- mately as a fair and natural result. In this view of the law words which do not degrade the character do not injure it, and cannot occasion loss. In *Cook's Law of Def.,* (*p.* 24), it is said " in order to render the consequence of words spoken special damage, the words must be in themselves dis- paraging ; for if they be innocent the consequence does not follow naturally from the cause." In *Kelly* v. *Partington,* (5 *Barn. & Adolph.,* 645 ), which was an action for slander, the words in the declaration were " she secreted 1*s.* 6*d.* under the till, stating these are not times to be robbed." It was alleged as special damage that by reason of the speak- ing of the words a third person refused to take the plaintiff into service. The plaintiff recovered one shilling damages, and the defendant obtained a rule *nisi* for arresting the judg- ment on the ground that the words, taken in their grammati- cal sense, were not disparaging to the plaintiff and therefore that no special damage could result from them. DENMAN, C. J., said " The words do not of necessity import any thing injurious to the plaintiff's character, and we think the judg- ment must be arrested unless there be something on the face of the declaration from which the court can clearly see that the slanderous matter alleged is injurious to the plaintiff. Where the words are ambiguous, the meaning can be supplied by *inuendo;* but that is not the case here. The rule for arresting the judgment must therefore be made absolute." LITTLEDALE, J., said " I cannot agree that words laudatory of a party's conduct would be the subject of an action if they were followed by special damage. They must be defamatory or injurious in their nature. In *Comyns' Digest,* title ' *Action on the case for Defamation,*' ( *D.,* 730 ), it is said generally that any words are actionable by which the party

has a special damage, but all the examples given in illustration of the rule are of words defamatory in themselves, but not actionable, because they do not subject the party to a temporal punishment. In all the instances put the words are injurious to the reputation of the person of whom they were spoken." TAUNTON, J., said: "The expression ascribed to the defendant 'these are no times to be robbed' seems to be saying the times are so bad I must hide my money. If Stenning refused to take the plaintiff into his service on this account he acted without reasonable cause; and in order to make words actionable, they must be such that special damage may be the fair and natural result of them." PATTESON, J., said: "I have always understood that the special damage must be the natural result of the thing done, &c. It is said that the words are actionable, because a person after hearing them, chose in his caprice to reject the plaintiff as a servant. But if the matter was not in its nature defamatory, the rejection of the plaintiff cannot be considered the natural result of the speaking of the words. To make the speaking of the words wrongful they must in their nature be defamatory. (*Vicars* v. *Wilcocks*, 8 *East*, 1.)" It necessarily follows from the rule that the words must be disparaging to character, that the special damage to give an action must flow from disparaging it. In the case last cited the plaintiff actually suffered damage from the defendant's words by their bringing her into disrepute, but the words were not calculated to produce such a result and therefore the action would not lie. In the present case the words were defamatory, and the illness and physical prostration of the plaintiff may be assumed, so far as this part of the case is concerned, to have been actually produced by the slander, but this consequence was not, in a legal view, a natural, ordinary one, as it does not prove that the plaintiff's character was injured. The slander may not have been credited by or had the slightest influence upon any one unfavorable to the plaintiff; and it does not appear that any body believed it or treated the

plaintiff any different from what they would otherwise have done on account of it. The cause was not adapted to produce the result which is claimed to be special damages. Such an effect may and sometimes does follow from such a cause but not ordinarily; and the rule of law was framed in reference to common and usual effects and not those which are accidental and occasional.

It is true that this element of the action for slander in the case of words not actionable of themselves — that the special damages must flow from impaired reputation — has been overlooked in several modern cases, and loss of health and consequent incapacity to attend to business held sufficient special damage. (*Bradt* v. *Towsley*, 13 *Wend.*, 253; *Fuller* v. *Fenner*, 16 *Barb.*, 333)'; but these cases are a departure from principle and should not be followed. If such consequences were sufficient, it would not be necessary to allege in the complaint or prove that the words were spoken in the presence of a third person; if spoken directly to the plaintiff, in the presence of no one else, he might himself, under the recent law allowing parties to be witnesses, prove the words and the damages and be permitted to recover. It has been regarded as unnecessary to an action that the words should be published by speaking them in the presence of some person other than the plaintiff, both in the case of words actionable and those not actionable. (1 *Stark. on Sland.*, 360; 2 *id.*, 12; *Cooke's L. of Def.*, 87.)

Where there is no proof that the character has suffered from the words, if sickness results it must be attributed to apprehension of loss of character, and such fear of harm to character, with resulting sickness and bodily prostration, cannot be such special damage as the law requires for the action. The loss of character must be a substantive loss, one which has actually taken place.

It is not necessary to decide whether the doctrine which has some support in the courts, that a husband may maintain an action for the slander of his wife producing

sickness which prevents her attending to her ordinary business, if it conflicts with the principle now advanced, may be maintained upon some ground of exception to the general rule. It is doubtless true that in such cases the law regards more the loss of the wife's services, which alone entitles the husband to sue, than the influence of the words upon her character, and the husband has no control over the effect of the words; whereas, in other cases, the injury to character, as shown by the special damages, is principally regarded, and unusual extraordinary consequences may be assumed to be in some measure under the control of the party complaining. Still, the objection that special damages of that nature are not a fair, ordinary, natural result of such a wrong remains, and this objection appears to be alike applicable and entitled to the same force whether the action be brought by the husband or the party slandered. ( *Olmstead* v. *Brown,* 12 *Barb.,* 657 ; *Keenholts* v. *Becker,* 3 *Denio,* 346. )*

ROOSEVELT, J., dissented; all the other judges concurring,

Judgment affirmed.