ALMIRA J. BASSELL, Respondent, *v.* SELAH P. ELMORE. Appellant.

The complaint in an action of slander, where the words charged are not actionable *per se*, must allege special damage. A general allegation that the slanderous charge injured the plaintiff in her good name, and caused her relatives and friends to slight and shun her, is insufficient.

Under a single count in an action of slander, plaintiff may prove a repetition of the same slanderous charge, for the purpose of showing the degree of malice, and thus enhancing the damage. So, also, when the words charged are not actionable *per se*, but the plaintiff has alleged and proven special damage, she may show a repetition of the charge, although not spoken in the presence or brought to the knowledge of the one through whose action plaintiff sustained the special damage.

The doctrine that an action of slander for words not actionable *per se*, cannot be maintained unless spoken in the presence, or brought directly to the knowledge of, the one who acted upon them, to the pecuniary injury of plaintiff, as laid down in *Keenholtz* v. *Becker* (3 Denio, 346), questioned. (LEONARD, C.)

Plaintiff charged the paternity of her bastard child upon defendant's son. *Held*, that the fact that defendant was engaged in an attempt to settle the matter between plaintiff and his son did not authorize him to blacken her character; and a charge made by him, while so engaged, that she was a public prostitute, was not a privileged communication.

(Argued January 9, 1872; decided May term, 1872.)

APPEAL from judgment of the General Term of the Supreme Court in the fifth judicial district, affirming a judgment in favor of plaintiff entered upon a verdict.

This is an action of slander. The complaint contains two counts, in each of which it is alleged that the defendant, in 1862, charged the plaintiff with being a public prostitute, and with having had illicit intercourse with divers men. The only allegation of damage in the second count is that the slanderous statement greatly injured the plaintiff in her good name, and caused her relatives and friends to slight and shun her.

The answer alleges that in July, 1862, the plaintiff had a bastard child, which she charged upon defendant's son, claiming also that he should marry her; and that the alleged slanderous words were spoken in reference to the said charge against his son, and in negotiations for the settlement of the same, and in reference to the marriage of his son with the plaintiff, under such circumstances as would make what he said, privileged communications.

Upon the trial it appeared that the plaintiff had a bastard child, in July, 1862, and charged its paternity upon defendant's son, and that she and her friends desired and claimed that he should marry her. It was proved that the defendant uttered the slanderous words charged to one Madison Elmore, his brother, and also to his brother-in-law, Rodney Hill. The latter stood *in loco parentis* to the plaintiff, and testified that in consequence of the slanderous words charged he turned the plaintiff away from his house, and refused her a home in his family, where she had been residing as an adopted daughter from her infancy. Certain exceptions were taken during the trial, and other facts appeared, which sufficiently appear in the opinions.

*G. N. Kennedy* for the appellant. The second count in the complaint was defective in not alleging special damage, the words not being actionable *per se*. (1 Chitty's Pleadings, 386; *Tobias* v. *Howland*, 4 Wend., 537; *Beach* v. *Ranney*,

2 Hill, 309.) There being, then, but one count, but one slanderous charge could be proved. (*Root* v. *Lowndes*, 6 Hill, 518; *Keenholtz* v. *Becker*, 3 Den., 346.) The special damage must be shown to be the natural and immediate consequence of speaking the words. (*Beach* v. *Ranney*, 2 Hill, 309; *Keenholtz* v *Becker*, 3 Den., 346.) The words were privileged. (*Van Wyck* v. *Aspinwall*, 17 N. Y., 190; *Harrison* v. *Bush*, 32 Eng. L. & E., 173; *Armsby* v. *Douglass*, 37 N. Y., 479.)

*D. Pratt* for the respondent.. A repetition of the same slanderous words may be proved to show malice. *Fry* v. *Bennett*, 28 N. Y., 324; *Fowler* v. *Bowen*, 30 id., 20; *Titus* v. *Sumner*, 44 id., 266; *Howard* v. *Seaton*, 4 Com., 157; *Johnson* v. *Bowen*, 57 Barb., 118; *Jarvis* v. *Hathaway*, 3 J., 181.) Sufficient special damage was shown. (*Williams* v. *Hill*, 19 Wend., 305; *Olmsted* v. *Miller*, 1 Wend., 556.) The charge was not privileged. (*Gilbert* v. *People*, 1 Denio, 44; *Burlingame* v. *Burlingame*, 25 Wend., 448; *Lathrop* v. *Hyde*, 25 id., 448; *Thorn* v. *Moser*, 1 Den., 488.)

EARL, C. The defendant received hard measure of justice at the hands of the jury, but for this he has no remedy here. We can review only errors of law, and of these the defendant claims there were several at the trial.

The second count in the complaint was undoubtedly defective, because it did not allege any special damage which has been recognized as sufficient in law to uphold an action like this. It simply alleged that the slanderous charge injured plaintiff in her good name, and caused her relatives and friends to slight and shun her, to her damage $2,000. (*Beach* v. *Ranney*, 2 Hill., 309; *Terwilliger* v. *Wands*, 17 N. Y., 54; *Wilson* v. *Goit*, 17 N. Y., 442.) There was, then, but one good count in the complaint, and the defendant's counsel objected on the trial that the plaintiff could therefore prove but one utterance of the slanderous charge. The objection was not well taken. It is now well settled that,

under a single count in the complaint, the plaintiff may show a repetition of the same slanderous charge even down to the trial, not for the purpose of sustaining the action, but for the purpose of showing the degree of malice, and thus enhancing the damage which the jury is authorized to award the plaintiff. (*Johnson* v. *Brown*, 57 Barb., 118; *Thorn* v. *Knapp*, 42 N. Y., 474; *Titus* v. *Sumner*, 44 id., 266.)

Ordinarily, the repetition of defamatory language by another than the first publisher is not a natural consequence of the first publication, and, therefore, generally the loss resulting from such repetition, does not constitute special damage, and is not attributable to the first publisher. This rule results from the principle that every one who repeats a slander is responsible for the damage caused by such repetition, and such damage is not the proximate and natural consequence of the first publication of the slander. But if the slander be repeated under such circumstances as to be justifiable and innocent, and not to give a cause of action against the one repeating the same, then the first publisher thereof is generally responsible for the damage caused by such repetition, (*Terwilliger* v. *Wands*, 17 N. Y., 54; *Fowles* v. *Bowen*, 30 id., 20; *Ward* v. *Weeks*, 7 Bing., 211.)

These rules were not violated on the trial of this action. Madison Elmore was permitted to testify that the slanderous charge was uttered to him by the defendant. After the close of plaintiff's case, defendant's counsel moved to strike out this evidence on the ground that the charge was made in the absence of Hill, who stood in *loco parentis* to the plaintiff, and, hence, that no special damage could have resulted from it. The court denied the motion on the ground that the evidence was proper on the question of malice. I think the ruling of the court was correct. The evidence was not competent to sustain the action. But this was an action in which punitive damages could be given, and, hence, with the view of enabling the jury to measure out the proper punishment due to the defendant, it was competent for the plain-

tiff to show the degree of malice by which he was actuated; and, hence, within the cases above cited, it was competent to show a repetition of the same slanderous charge. It was peculiarly competent to give this evidence, as the defendant claimed on the trial that he uttered the defamatory words under such circumstances as made them privileged communications, and the publication justifiable and innocent.

The special damage alleged and proved was sufficient to sustain the action. The plaintiff had for many years lived with her uncle, Mr. Hill, as a member of his family. In consequence of this charge, she was refused permission to remain in his family, and was obliged to seek a home elsewhere. Thus special damage was shown within any of the decisions upon the subject.

It is further claimed, on the part of the defendant, that the conversations in which the charge was made were privileged. The defendant in his conversation with plaintiff's uncle, Hill, made the charge and said he could prove it, and that he was anxious to prove it. He professed to speak of something of which he had positive knowledge. He was not searching for information; he was not engaged in advising his son upon the subject of his difficulty with the plaintiff, nor in advising Hill of his duty to the plaintiff. Even if he was engaged in an attempt to settle the matter between plaintiff and his son, he was not privileged, within any case which has come to my attention, to blacken her character in such emphatic terms.

Having thus examined all the errors alleged, I reach the conclusion that the judgment should be affirmed, with costs.

Leonard, C. The first count of the complaint only is good. The words are not actionable *per se*, and can be made so only on account of special damage having been sustained thereby, which must be suitably stated in the complaint. The second count is wanting or defective in this particular. Hence the defendant is correct in his position that evidence not material to support the first count was inadmissible.

The first witness detailed several conversations with the defendant, in which he made use of observations reflecting upon the chastity of the plaintiff, but not in the words charged by the first count. The counsel for the plaintiff called for other conversations with the defendant. Counsel for the defendant objecting at this point that no evidence could be given under the second count, the court held that the plaintiff should not be confined to proof of the conversation on that occasion, and that she might prove other conversations charging her with being a public prostitute. The judge said, also, that he overruled the objection that the plaintiff could not give evidence under both counts. The defendant excepted.

The question in regard to giving evidence under both counts was not legitimately before the court, and the judge ought to have refused to pass upon it. There was no evidence at that time offered not applicable to the first count. In fact, the evidence which had been given was not material to any count, unless it might be received as tending to prove the animus of the defendant; and in that aspect it was equally applicable to the first count as to the second. The ruling in regard to the right to give evidence under the second count was an error, but as the question was not before the court at the time, the ruling and exception were merely speculative, having nothing to do with the case, and the error cannot, for that reason, produce any result here. The plaintiff could not be shut out from proving the material allegations of his complaint, because evidence had been given of some charges of the defendant which were not so offensive as those alleged. The court was right in holding that he should not be confined to the occasion of which the witness had been testifying. The plaintiff had still the right to prove his charge as stated in his first count.

The evidence of the repeated statement by the defendant of the want of chastity of the plaintiff, and the subjects of conversation when the statements were made, tended to prove that the defendant was actuated by an evil motive, or malice,

as it is usually termed. If the character of the plaintiff for lewdness and incontinence with many men was settled, his son, who had been charged as the putative father of the plaintiff's child, might be exonerated and saved from an expensive charge. It was for the jury to consider whether the defendant had such a motive, or whether the slanderous imputation was made to excuse his son, among the members of his own family, from the charge of seducing and not marrying the plaintiff, and on that ground to be held as a privileged communication. For the same reasons the motion to strike out the evidence of this witness was properly denied.

It is also objected that none of the slanderous charges proven by this witness are contained in the first count of the complaint. The complaint alleges that the defendant stated of the plaintiff that she was a whore, a public whore, and that she had illicit intercourse and carnal intercourse with Joseph, etc. The witness testified, among several conversations had with the defendant, in which he made general charges implying a want of chastity by the plaintiff, that the defendant said "she has been whoring with one individual, and I can prove it." The witness said he could give the name of the person mentioned, but was not asked. This language was, in effect, substantially the same as that alleged in the complaint. It had the same meaning, and the character of the plaintiff was equally assailed by the one charge as the other.

It was not proven that this conversation transpired in the presence of, nor that it was reported to, the uncle of the plaintiff, with whom she resided, and who finally discarded her from his family, and refused her a home on account of these aspersions. This appears to have been the only pecuniary damage sustained by the plaintiff. Upon the authority of *Keenholts* v. *Becker* (3 Denio, 346), the action could not have been sustained upon the evidence of this witness, as to the slanderous charge, for the reason that it is supposed that it never reached the uncle, through whose action alone the plaintiff sustained any damage. I took

occasion to say, in the case of *Titus* v. *Summer* (44 N. Y. R., 266–269), that I doubted the doctrine of *Keenholts* v. *Becker* (*supra*), in this respect: A slanderous charge gets in circulation and is many times repeated until it often becomes impossible to trace it so that it shall appear to have been carried directly from the slanderer to the person from whom the pecuniary injury has been sustained by the party complaining. The rule is entirely too favorable for the malicious slanderer. He should be held responsible when it can be proven, as in this case, that the slander uttered did come to the knowledge of some person, who acted upon it to the pecuniary injury of the plaintiff. The injury has been done, and it is quite too logical and exact to require the plaintiff to follow the devious channels by which it has reached the person from whom she finally received some pecuniary injury. The present case does not turn on that question, but it leaves the question of malicious intention the only ground for supporting the refusal to strike out the evidence of the first witness, or take it from the consideration of the jury.

The uncle, who turned the plaintiff out of his house, afterward testified that the defendant, in his hearing, called the plaintiff "a whore and a perfect prostitute, and had been for two years before," and that he named a person who, he said, could prove it. This evidence was quite enough to sustain the action.

The other subjects discussed, as to whether the communication was privileged, and whether she was turned away from her uncle's house by reason of the slanders uttered by the defendant, were questions for the jury, and have been passed upon by them adversely to the defendant; with their action we have no concern.

The judgment should be affirmed, with costs.

All concur.

Judgment affirmed.