## PRIME v. EASTWOOD.

1. **Slander:** INTERPRETATION OF WORDS. Words are to be construed in the sense in which, in the light of all the circumstances known to speaker and hearer, they are calculated to impress the hearer's mind and will be naturally understood.

2. ———: EVIDENCE: QUO ANIMO. Evidence of other slanderous utterances than those charged in the petition is admissible for the purpose of showing malice.

3. ———: MENTAL DISTRESS: AGGRAVATION OF DAMAGES. Mental anxiety and distress of mind cannot be shown in aggravation of damages in an action for slander.

4. ———: REPETITION OF SLANDEROUS WORDS. The repetition of slanderous words is wrongful, and damages which result therefrom are a consequence of that wrong and not a natural, immediate and legal effect of the original speaking by defendant.

*Appeal from Story Circuit Court.*

THURSDAY, APRIL 19.

THIS is an action for the recovery of damages for slanderous words alleged to have been spoken by defendant concerning plaintiff, charging plaintiff with stealing defendant's hogs. The first count of the answer contains a general denial to all the counts of the petition. The other counts of the answer admit that defendant had conversations similar to those alleged in the second and third counts of the petition, but allege that he spoke the words without malice, and without any intention of charging plaintiff with the commission of a crime.

There was a jury trial, and a verdict and judgment for plaintiff for $400. The defendant appeals.

*Rainbolt & Barnes*, for appellant.

*McCarthy, Stevens & Underwood*, for appellee.

DAY, CH. J.—I. Upon the trial one P. L. Porter testified as follows: "About the first of November, 1875, defendant

1. SLANDER: interpretation of words.

came to my house and said that he was out looking for some hogs that he had lost, and claimed

that his hogs were over at plaintiff's who would not give them up to him; that he had asked plaintiff for them, and plaintiff said they were his own hogs and he would not give them up. Defendant further said that he had cut off the ears and tails of them, to make them look like his hogs. I had another conversation four or five days afterward with defendant in regard to the matter. He said: 'Porter, I know you won't steal hogs, but I know George Prime will.' Says I: 'Mr. Eastwood, that is saying a good deal; you can't convince me any way you can fix it that George Prime would steal; he has his bad ways, same as you and me, but so far as his stealing, I don't think he would do that. I have lived alongside of him as long as you have, and I say he won't steal.' Defendant said: 'I have lived near him as long as you have, and I know that he will.'"

It is strongly urged by appellant that the words spoken to Porter are not actionable, and could not reasonably have been understood in an actionable sense. Appellant insists that, although the words themselves charged the plaintiff with the commission of a criminal offense, yet if they were understood in a different sense by Porter, and defendant intended that they should be so understood, defendant is not liable. Citing *McCaleb v. Smith*, 22 Iowa, 242; *Desmond v. Brown*, 33 Iowa, 13; 1 Hilliard on Torts, 3d ed., p. 258; Townshend on Slander, 2d ed., p. 214, note 3, p. 173, note 1, and p. 189. The position of appellant would be correct if there were any proof of circumstances known to Porter from which he understood that the words in the connection in which they were employed were not intended to impute a crime. Words are to be construed in the sense in which, in the light of all explanatory circumstances known to speaker and hearer, they are calculated to impress the hearer's mind and will naturally be understood. *Dixon v. Stewart*, 33 Iowa, 125, and authorities cited. The conversation in this case had reference to the plaintiff's having defendant's hogs in his possession, claiming them as his own, and having cut off their ears and tails to make them look like his own. Respecting this, defendant said: "Porter, I know you won't steal hogs, but I know George Prime

will.  I have lived near him as long as you have, and I know that he will."  The natural import of these words is to charge the crime of larceny.   There is nothing in the circumstances proved tending to show that Porter could reasonably have understood them in any different sense, or that he did in fact understand them in a different sense.   Upon the contrary, the whole testimony of Porter shows that he understood the crime of larceny to be charged.   The words, therefore, must be considered in their usual and ordinary acceptation.

II.   The plaintiff introduced one Frank Gibson, who testified as follows:  " I met defendant one day and passed the time of day with him, and he spoke something about hogs; he said that plaintiff had stolen some of his hogs, and he could prove it."  This testimony was objected to for the reason that there is no allegation in the petition of a conversation with this witness.   Such evidence is admissible for the purpose of showing malice.  *Beardsley v. Bridgman*, 17 Iowa, 290; *Schrimper v. Heilman*, 24 Iowa, 505.

III.   The plaintiff, against defendant's objection, was permitted to prove that, in consequence of the charge, he had been troubled, and suffered mental anxiety.  If this testimony was at all admissible it must have been for the purpose of aggravating the damages. The action of slander is given for injuries affecting the reputation.   In *Terwilliger v. Wands*, 17 N. Y., 54, it was held that special damages, to support an action for defamatory words not actionable in themselves, must result from injury to the plaintiff's reputation which affects the conduct of others toward him, and that his mental distress, physical illness and inability to labor, occasioned by the aspersion, are not such natural and legal consequences of the words spoken as to give an action.

In this case the court say:  " It would be highly impolitic to hold all language wounding the feelings and affecting unfavorably the health and ability to labor of another a ground of action, for that would be to make the right of action depend often upon whether the sensibilities of a person spoken of are

easily excited or otherwise; his strength of mind to disregard abusive, insulting remarks concerning him, and his physical strength and ability to bear them. Words which would make hardly an impression on most persons, and would be thought by them, and should be by all, undeserving of notice, might be exceedingly painful to some, occasioning sickness and an interruption of the ability to attend to their ordinary avocations. There must be some limit to liability for words not actionable *per se*, both as to the words and the kind of damages; and a clear and wise one has been fixed by the law. The words must be defamatory in their nature, and must in fact disparage the character; and this disparagement must be evidenced by some positive loss arising therefrom directly and legitimately as a fair and natural result. In this view of the law words which do not degrade the character do not injure it, and cannot occasion loss."

The same doctrine is announced in *Wilson v. Goit*, 17 N. Y., 442. It seems to us that these cases announce the proper doctrine. If mental anxiety and distress of mind do not constitute such special damages as will sustain an action of slander for words not actionable *per se*, it is because distress of mind and mental anxiety do not constitute such damage as can be redressed by an action for slander, and consequently they cannot enhance the damages when the words spoken are actionable *per se*. And this is the view declared in Townshend on Slander and Libel, section 391, in which it is said: "The plaintiff, to aggravate damages, cannot prove the defendant's wealth, nor that it was currently reported that defendant had charged the plaintiff with the crime mentioned in the declaration, nor that the plaintiff had suffered distress of mind." The case of *Swift v. Dickerman*, 31 Conn., 285, holds a contrary view; so also does *Dufort v. Abodie*, 23 La. Ann., 280.

IV. Against the objection of defendant the court permitted the plaintiff to prove that there was a rumor in the neighbor-hood in reference to plaintiff, and that defendant had claimed that plaintiff had some of his hogs. The court instructed the jury as follows: "In determining

4. ——: repetition of slanderous words.

the amount of damages to be given to the plaintiff, if he is entitled to recover, you may consider the extent of the publication, as how far known and how understood and believed in the community where known, so as to determine the extent of the injury to his reputation." The words charged were spoken on different occasions to Porter, to Tilden, and to McCarthy, no one else being present. "Every speaker is the publisher of what he speaks, and is solely liable therefor. That the words spoken have been previously published by another can neither relieve the subsequent speaker from his liability for the publication made by him, nor impose any liability on the previous publisher." Townshend on Slander, sections 114, 202. See also *Terwilliger v. Wands*, 17 N. Y., 54 (58); *Ward v. Weeks*, 7 Bing., 211; *Stevens v. Hartwell*, 11 Metcalf, 542.

The true rule upon the subject, we think, is that recognized in *Terwilliger v. Wands*, *supra*, that where there is no proof of the circumstances under which slanderous words are repeated by the parties who originally heard them, the general rule that a repetition of slanderous words is wrongful applies, and damages which result from repeating them are a consequence of that wrong, and not a natural, immediate and legal effect of the original speaking by the defendant.

The effect of the action of the court in receiving this evidence and in giving the above instruction was to hold the defendant liable for the extent to which the publication was known, and consequently for the repetition of the publication by others, without reference to the circumstances under which the repetition was made. In this there was error.

REVERSED.