SAMUEL ELMER *vs.* GEORGE R. FESSENDEN.

Franklin.　September 17, 1889. — April 9, 1890.

Present: MORTON, C. J., FIELD, C. ALLEN, HOLMES, & KNOWLTON, JJ.

*Evidence — Hearsay — Declarations — Repetition of Slander.*

In an action for slander in falsely telling the plaintiff's workmen that there was arsenic in silk furnished them to work with, whereupon they left his employment, the plaintiff, besides other proof that the defendant spoke to the workmen, offered in evidence their declarations to the plaintiff's superintendent upon leaving that the defendant told them the story, but they were excluded. *Held,* that the declarations were improperly excluded.

On the issue whether the defendant was responsible for a repetition of the slanderous words, it was *held* that he was not liable, as it did not appear that the repetition was privileged or authorized.

TORT for slander. The declaration alleged that the defendant, who was a physician, falsely informed certain employees of

the plaintiff, who was a manufacturer of whip-snaps from silk thread, that the silk thread which was furnished them by the plaintiff, and which they were compelled to manipulate in their work, contained arsenic, as a result of which information they ceased to work for the plaintiff; and that the plaintiff had suffered in the loss of their services certain specified damage in his business. The answer contained a general denial, and also alleged that whatever words were spoken were privileged. Trial in the Superior Court, before *Barker*, J., who allowed a bill of exceptions, in substance as follows:

" The plaintiff introduced evidence tending to show that he was, during 1887, a manufacturer of whip-snaps from silk thread in Ashfield, which thread his employees there resident were compelled to manipulate; and that in the month of June, 1887, the defendant, who was a physician in that town, had circulated the report that he had sent some of the silk thread used in the manufacture to the state board of health for analysis, and received from that board a report that it contained arsenic in sufficient quantities to be dangerous to the employees using it in the way they did. The witness who testified to these facts had also testified that he was, and had been from March, 1887, the agent of the plaintiff who superintended this business, and he was permitted — on the assurance of the plaintiff's counsel that he expected to prove later that certain of the employees, for the loss of whose services damages were specified in the declaration, had stopped work by reason of the statement of the defendant to them above referred to relative to the report of the board of health — to testify that these employees stopped work on the 11th day of June, 1887, for some time. The plaintiff then, to prove the reason why they stopped work, asked the witness whether they gave any reason for stopping work. This question was excluded by the court. The plaintiff afterwards asked, ' What, if anything, did they say as reason for stopping? ' This question the court also excluded."

Afterwards the plaintiff called as a witness Anna M. Brackett, of Ashfield, who testified that she was, in June, 1887, in the employment of the plaintiff; and that in the first part of that month she stopped making as many whip-snaps as before because she heard there was poison in the silk. She was then

asked by the plaintiff from whom she heard this, and she said she could not remember. Thereupon the plaintiff's counsel, after stating to the judge that the plaintiff could not identify the person repeating this report to her, or produce any further evidence that it originated from the defendant, except evidence that the defendant had circulated identical statements, and that the informant of the witness stated to her that the report came from the defendant, further inquired of her, " What was the report which you heard in June, 1887, which caused you, as you have testified, to make a less number of whip-snaps?" This question the judge excluded. The further question was then asked her by the plaintiff, " From whom was the report stated to you to have come, if from any one?" This question the judge also excluded.

There was evidence tending to show that the question whether there was arsenic in the silk had been a matter of discussion among the plaintiff's employees and in the community in Ashfield since the preceding February; that several of the employees had received medical advice that there was arsenic in it, but their work had not fallen off before June; and that in fact there was no arsenic in the silk.

The jury returned a verdict for the defendant; and the plaintiff alleged exceptions.

*H. Winn*, for the plaintiff.

*J. A. Aiken*, for the defendant.

HOLMES, J. 1. It was a part of the plaintiff's case that the cause of his workmen's leaving his employment was the defendant's false story. If, as may be assumed, the excluded testimony would have shown that the workmen when they left gave as their reason to the superintendent that the defendant had told them that the board of health reported arsenic in the silk, the evidence was admissible to show that their belief in the presence of poison was their reason in fact. *Lund* v. *Tyngsborough*, 9 Cush. 36, 41, 43. *Aveson* v. *Kinnaird*, 6 East, 188, 193. *Hadley* v. *Carter*, 8 N. H. 40, 43. *United States* v. *Penn*, 13 Bankr. Reg. 464, 467. We cannot follow the ruling at *nisi prius* in *Tilk* v. *Parsons*, 2 C. & P. 201, that the testimony of the persons concerned is the only evidence to prove their motives. We rather agree with Mr. Starkie, that such

declarations made with no apparent motive for misstatement may be better evidence of the maker's state of mind at the time, than the subsequent testimony of the same persons. Stark. Ev. (10th Am. ed.) 89.

As a rule such declarations are not evidence of the past facts which they may recite. The cases in which they have been admitted to prove the cause of a wound or injury, when the declarations were made at the time, or immediately after the event, if not exceptions to the general rule, at least mark the limit of admissibility. *Commonwealth* v. *Hackett*, 2 Allen, 136, 140. *Commonwealth* v. *M'Pike*, 3 Cush. 181, 184. *Insurance Co.* v. *Mosley*, 8 Wall. 397. The excluded testimony was not competent to prove that the defendant did tell the workmen the story. As to that, it was mere hearsay, and was not within the scope of the special reasons which led to the decisions last cited. *Roosa* v. *Boston Loan Co.* 132 Mass. 439. *Chapin* v. *Marlborough*, 9 Gray, 244. *Bacon* v. *Charlton*, 7 Cush. 581, 586. *Aveson* v. *Kinnaird*, 6 East, 188. *People* v. *Thornton*, 74 Cal. 482, 486. It is admitted, however, that there was independent testimony that the defendant spoke to the workmen, and therefore the exceptions must be sustained.

2. It is argued that the defendant was answerable for the repetition of such a story as this, on the ground that any one who heard it was morally bound to repeat it to the workmen. The general rule, that a man is not liable for a third person's actionable and unauthorized repetition of his slander, is settled. *Hastings* v. *Stetson*, 126 Mass. 329, 331. *Shurtleff* v. *Parker*, 130 Mass. 293, 296. If the repetition is privileged, the question becomes somewhat different. It is true that the fact that the sufferer has no action against one person is not a sufficient reason for giving him one against another, even if otherwise he is remediless. But the case is withdrawn from the principle applied in many instances, that the law will look no further back than to the wrongdoer who is the proximate cause of the consequence complained of. *Clifford* v. *Atlantic Cotton Mills*, 146 Mass. 47, 49. We need not now decide that, when the original slander was uttered under such circumstances that the privileged repetition manifestly was to be expected, the damage caused by the repetition could not be recovered for to

the same extent as if the defendant had repeated the slander himself.   Compare *Derry* v. *Handley*, 16 L. T. (N. S.) 263 ; *Parkins* v. *Scott*, 1 H. & C. 153 ; *Keenholts* v. *Becker*, 3 Denio, 346, 352; *Terwilliger* v. *Wands*, 17 N. Y. 54, 59; *Fowles* v. *Bowen*, 30 N. Y. 20, 22 ; *Titus* v. *Sumner*, 44 N. Y. 266 ; *Bassell* v. *Elmore*, 48 N. Y. 561.

In the case before us, it did not appear that the repetition was privileged.   Assuming that the story heard by Anna M. Brackett was the one set in motion by the defendant, there was no evidence as to how it came from him to her.   He may have uttered it to a stranger, and it may have passed through twenty mouths before it reached the plaintiff's workmen.   We do not know whether those who repeated it believed it, or whether any one of them made it in pursuance of a supposed duty, or, if a stranger and a volunteer under any circumstances could make out a case of privilege, whether such circumstances existed.   See *Shurtleff* v. *Parker*, 130 Mass. 293; *Joannes* v. *Bennett*, 5 Allen, 169, 171 ; *Krebs* v. *Oliver*, 12 Gray, 239, 243 ; *Waller* v. *Loch*, 7 Q. B. D. 619, 621 ; *Davies* v. *Snead*, L. R. 5 Q. B. 608, 611.   It cannot be contended that any one who heard the story was under such a moral obligation to repeat it broadcast without further inquiry, that the defendant must be taken to have contemplated and authorized the repetition until at last it reached the plaintiff's workmen.        *Exceptions sustained.*