# CHARLESTON.

## L. H. AND B. F. SWARTZ v. D. A. KAY et al.

Submitted November 15, 1921.   Decided November 29, 1921.

1. EVIDENCE—*Declarations of Customers Admissible in Action for Injury to Business.*

   In an action for conspiracy to injure and destroy another's business, by withdrawing and inducing others to withdraw their patronage, by false and malicious reports concerning him and the conduct of his business, it is competent to give in evidence the declarations of such customers to others as to their reasons for their actions, providing such reasons are shown to have connection with the false and malicious reports promulgated by the accused.   p. 644).

2. CONSPIRACY—*Declaration of Defendants in Action for Injury to Business Held Admissible.*

   And upon the same   principle,   but   with stronger reason, the declarations and representations of defendants themselves, accused of so conspiring, and of such false and malicious reports concerning the business of another, may be given in evidence by witnesses to whom they were made, such evidence not being incompetent as hearsay.   (p. 646).

3. SAME—*Gist of Action is Injury Done; Verdicts Against Those Conspirators Contributing to Injury to Plaintiff's Business Proper.*

   In a case of this character the gist of the action is the injury done to plaintiff's business, not the conspiracy, and if those accused, or any of them, are shown to have done the acts complained of, the verdict may be against such of them as may have done or contributed to the injury, the fact of the conspiracy in such cases being simply to aggravate the damages and to render what was done by any of the actors the act of all.   (p. 648).

4. SAME—*Acts and Statements of Conspirators Admissible to Show Conspiracy.*

   In cases of alleged conspiracy courts are quite liberal in the admission of evidence and will allow the fact of such conspiracy to be made out by the declared acts and statements of the individual conspirators, and where several persons have similar or identical grounds of complaint against another and by their acts and utterances endeavor to injure or destroy his

business, each being aware of the feelings and 'doings of the others and approving the result, such conduct often affords sufficient evidence to sustain a verdict against them all. (p. 648).

5.    SAME—*Plaintiff's Disloyalty Does Not Justify Conspiracy to Ruin His Business.*

The fact that one may be suspected or accused of disloyalty and in sympathy with an alien enemy at war with his country, will not justify or warrant another citizen in combining with others to circulate false reports about the accused's business with the object of destroying it, so as to injure and damage him thereby. (p. 650).

6.    PLEADING—*Defective Declaration Curable by Bill of Particulars.*

If in such an action for conspiracy to 'destroy or injure another's business, the declaration does not set forth with sufficient certainty the fact or acts done in furtherance of the conspiracy, the defect may be cured by a proper bill of particulars, in accordance with the rule announced in *Transportation Company* v. *Standard Oil Company.* 50 W. Va. 611, 622, point 5 of the syllabus. (p. 652).

(LIVELY, JUDGE, absent.)

Error to Circuit Court, Jackson County.

Action by L. H. Swartz and others against D. A. Kay and others. Judgment for plaintiffs, and defendants bring error.

*Affirmed.*

*Lewis H. Miller. Charles E. Hogg, T. J. Sayre* and *Warren Miller*, for plaintiffs in error.
*J. L. Wolfe,* for defendants in error.

MILLER, JUDGE:

This action was to recover from defendants damages for wrongfully and unlawfully conspiring together to injure and destroy the business and property of plaintiffs, who owned and operated a flour mill in Jackson County, known as the Mt. Alto Mills, which they alleged was worth in production capacity at least $5,000.00 per year, and that the plant itself was worth at least the sum of $15,000.00.

The allegations of conspiracy in the first count are that the defendants, in the months of May and June, 1918, maliciously and wickedly contriving and intending to injure plaintiffs and ruin their business and render their plant and mills worthless, and deprive them thereof, did confederate and conspire together and with each other to prevent all persons producing and raising wheat in said county and in the adjoining county of Mason, where the patronage of said mills had extended, from bringing their wheat to said mills, and from buying flour or meal from said plaintiffs, and from trading or dealing in any manner with them, the defendants or either of them not being owners or operators of any mills, nor in any way engaged in any business in competition with plaintiffs; and that the acts of defendants in so counseling and advising and conspiring to prevent the former customers of plaintiffs, who at that time and theretofore had traded with them, and had brought their wheat to them to exchange for flour, and had bought flour from them, from dealing with them, were wanton and malicious, and not done by right of competition or under cover of friendly and neighborly counsel, but in pursuance of said conspiracy and solely for the purpose of injuring plaintiffs in their said business and property.

And after setting out the manner and means of so conspiring, this count further avers that because thereof a very large number of the patrons and persons who had been accustomed to trade with and patronize plaintiffs, quit doing so, specifying a number of such persons and others who had been so induced; and in furtherance of their object it is averred that defendants tried to procure the arrest of plaintiffs by federal authorities, for, being German by descent, they were falsely accused of being unfriendly to and not in sympathy with the United States, all of which was untrue and done by defendants in furtherance to injure and destroy plaintiff's business.

The second count is substantially the same as the first, except that in describing the time of the unlawful and ma-

licious acts and conduct of defendants, it is averred that they were done during the spring and summer of 1918.

On the trial there was a verdict and judgment against defendants for six hundred dollars, of which they complain in this court.

The first error alleged and relied on for reversal is that the court over defendants' objection admitted certain evidence characterized as hearsay, and for that reason incompetent. This characterization is applied to two classes of testimony: First, the declarations of some nine former customers, named in the bill of particulars called for by defendants and given in evidence by plaintiffs and others, as to the reasons assigned by them for withdrawing their custom from plaintiffs' mill, to the effect that plaintiffs were pro-German, disloyal to the United States in the war with Germany, and that they were putting poison in their flour and ground up glass in their meal; and that they were not, as they represented themselves to be, engaged in the manufacture of flour and feed for the United States government: Second, the declarations of sundry witnesses, merchants in the county and former customers of plaintiffs, as to what customers of theirs gave as reasons for refusing to buy from them flour and feed manufactured by plaintiffs at their said mills, to the effect that one or more of the defendants had told them that plaintiffs were pro-Germans and disloyal citizens of the United States and were putting poison and broken up glass in their flour and meal, and other false reports derogatory to their character, and that they ought to be shot, etc.; and that they would not buy liberty bonds or war saving stamps or contribute to the Red Cross society; and that they had tried to wreck a train.

An argument made by counsel for defendants applicable to both these classes of testimony is that they amounted only to hearsay, and that the declarations were not made in the presence of defendants, wherefore they are incompetent. One of the principal facts which the plaintiffs were called upon to establish was that the persons named in their bill of particulars actually ceased to trade with them and with

the merchants who bought and sold their products, and the reasons they gave for doing so. If they ceased for causes in no way connected with defendants or their false reports about plaintiffs and their business, of course defendants would in no way be responsible for damages for the loss of their trade and business. *Leech* v. *Farmers Tobacco Warehouse Co.*, 171 Ky. 791, syllabus 2. In cases of this kind the rule seems to be that declarations of customers or workmen quitting trade or employment are competent to prove the facts and motives for their conduct, not the prior fact that defendants were responsible for the false reports put in circulation. The fact of defendant's guilt, if true, may be shown by other competent testimony. *Elmer* v. *Fessenden*, 151 Mass. 359, and cases cited; Starkie on Evidence, § 89, and note. In one of the cases cited in the note, an action for enticing away the servant of the plaintiff, it was held that evidence of the declaration of the servant at the time he left, as to the motive which influenced him was admissible. *Hadley* v. *Carter*, 8 N. H. 40. Other cases referred to in the note will be found to illustrate the application of the same principle. In 2 Jones on Evidence, sec. 300 (303), quoting 1 Greenleaf on Evidence, Sec. 100, it is said: "It does not follow because the writing or words in question are those of a third person, not under oath, that therefore they are to be considered as hearsay. On the contrary it happens, in many cases, that the very fact in controversy is whether such things were written or spoken, and not whether they were true; and, in other cases, such language or statements, whether written or spoken, may be the natural or inseparable concomitants of the principle fact in controversy." In 3 Wigmore on Evidence, sec. 1729 (2), it is said: "A declaration of a present existing *motive* or *reason* for action is admissible,—assuming, of course, that the declarent's motive is relevant. So far as concerns accused persons, this use is later considered (post, § 1732). In other cases, the typical instances in which motive becomes material are actions for loss of service or of custom, in which it is necessary to show that the customer's

or servant's abandonment of the plaintiff was motivated by the defendant's persuasion or threats; and actions in which the reliance of a person *on another's representations* becomes a part of the issue.    The use of declarations of this sort is fully recognized in numerous precedents.''    See also ilustrative cases cited in note.    The Supreme Court of the United States, in *Lawlor* v. *Loewe*, 235 U. S. 522, 536, applied this rule of evidence to the introduction of newspapers for the purpose of showing publicity in places and directions where the facts were likely to bring home notice to the defendants, to prove  intent  and detrimental consequence of the principal acts complained of; and also to letters from customers of a boycotted manufacturer, as reasons for ceasing to deal with him.    In the case of *Moores & Company* v. *Bricklayers' Union No. 1,* 10 Ohio Dec. 665, affirmed *Bricklayers' Union No. 1* v. *Moores & Company,* 51 Ohio St. Rep. 605, where a business firm sued a labor union for losses charged to a malicious conspiracy, it was decided that plaintiff might show declarations made by its customers, at the time they withdrew their trade, as to their reasons for its withdrawal.    The objections to this class of testimony were general, and not limited; and being good for the purpose indicated, the general objections were properly overruled.

It follows with greater reason, that all the evidence of these witnesses as to declarations by defendants to them directly respecting plaintiffs and the conduct of their business, was also admissible to connect them with the main fact—their responsibility for the false accusations, and consequent loss of customers.

The next question is, whether a conspiracy to impair and destroy plaintiff's business, and resulting substantially as alleged, is established by the evidence.    On the trial the defendants submitted to the jury three interrogatories.    Of these, the first and second, and the jury's answers thereto, are as follows: First, ''Did the defendants enter into a conspiracy as to how they could injure plaintiffs by getting the patrons of plaintiffs' mills to cease trading with and doing business with plaintiffs at  their  mills?''    Answer:

"Yes." Second; "If defendants did enter into such conspiracy, (a) when, (b) where, and (c) how was such conspiracy formed?" Answer: (a) "Spring of 1918;" (b) "In the vicinity of Mt. Alto, W. Va.;" (c) "By holding secret meetings and circulating false reports concerning the Swartz Brothers, calculated to ruin their business." In answer to the third interrogatory, the jury answered that plaintiffs lost their custom in the spring and summer of 1918, and this was the fact as alleged in the second count; that the cause was the false reports of defendants, warning the patrons of plaintiffs not to trade with them nor to have anything to do with them; and that these acts so calculated to injure the plaintiffs were committed by D. A. Kay, G. J. Polsley, J. E. Wilson, Ruben Smith, A. A. Shinn and Edwin Calhoun, omitting the names of the defendants S. S. Webster and N. D. Webster, though finding their verdict against all the defendants sued including the Websters. The answers to these interrogatories may not be wholly conclusive of the rights of the plaintiffs, but they were submitted by defendants, and the answers not being inconsistent with the general verdict, but sustaining it, are binding upon them as to the facts found, if sufficiently supported by the evidence. That meetings were held at which all the defendants except S. S. Webster were present at some or all of them, and at which the plaintiffs and their business were considered and derogatory speeches were made by one or more of defendants, substantially as alleged, is not denied, nor is it controverted that the false accusations were made to various persons, customers and former friends of plaintiffs throughout the community from which plaintiffs drew their trade; that these accusations were repeated to agents of the United States government, and an investigation secured by one of such agents, who after investigating them, reported that the accusations were groundless and unwarranted by the facts; that even after this report, some of the defendants continued to repeat the same falsehoods, to the injury and damage of plaintiffs. As to S. S. Webster, the evidence was that, while not shown to have attended meetings, he was active in

several instances, in spreading some of the false reports orig-
inating with the other conspirators. It is quite clear from
the record that both the Websters were engaged in circulat-
ing the propaganda of their confederates, to the detriment
and injury of plaintiffs, wherefore, no doubt the jury in-
cluded them properly, we think, in the verdict.    As to the
accusations of pro-Germanism, disloyalty to the government,
and failure to buy liberty bonds and war savings stamps,
and to support the Red Cross society, the fact is that
plaintiffs were liberal purchasers of bonds and savings
stamps, and did support in the same way the Red Cross,
more liberally than most, if not all, their accusers; that they
were loyal to the government in the operation of their mill
and the distribution of their products, while some of the
defendants were disposed to induce plaintiffs to violate the
law, and then thereby incurred their displeasure.    We can
not go into the details of the evidence, but it satisfies us
that the findings of the jury were more than justified, and
that a much larger verdict would have been justified by the
evidence.

In a case of this character the gist of the action is the in-
jury done plaintiff, not the conspiracy, and if defendants or
any of them be shown to have done the acts complained of,
the verdict and judgment may be against such or all of them
as are proved to have done or contributed to the injury; if
a conspiracy to do the injury is shown, the effect is to aggra-
vate the damages and to make what was done by one or more
of the conspirators the act of all, and to warrant a verdict
and judgment against all.    *Porter* v. *Mack,* 50 W. Va. 581;
*Ellis* v. *Dempsey,* 4 W. Va. 126; *Leech* v. *Farmers Tobacco
Warehouse Company, supra; Democrat Printing Company* v.
*Johnson,* 175 Pac. 737.    See also cases digested in Decennial
Digest, Conspiracy §§13, 14.

Because of the fact that it is often difficult to establish
a conspiracy by direct evidence, the courts are quite liberal
in the admission of evidence, and will allow the fact of con-
spiracy to be made out by the declared acts and statements
of the individual conspirators; and the fact that several per-
sons have similar or identical grounds of complaint against

another, and by their acts and utterances endeavor to injure or destroy the business of another, each being aware of the feelings and doings of the other. and approving of the result accomplished, often affords evidence of a confederation or common purpose sufficient to sustain the verdict. *Gilman* v. *The People,* 178 Ill. 19; *Webb* v. *Drake,* 52 La. Ann. 290.

As was held in *Leech* v. *Farmers Tobacco Warehouse Co.,* *supra,* where persons combine to affect injuriously or destroy the business of another person or corporation, and to that end cause to be circulated false and damaging reports concerning such person or his business, and the effect thereof is to accomplish the object intended, they will be individually and jointly liable for the damages sustained. One of the means adopted by defendants to accomplish the manifest purpose to do injury to plaintiffs and their business was to circulate the false reports, for which it is not shown there was the slightest foundation in fact, and to spread abroad in the community such false accusations. These reports, as they were intended, reached the ears of customers, and drove them away from plaintiff's mills. The reasons such customers gave for withdrawing their trade from plaintiff's and refusing to buy their products from merchants to whom they sold goods, were the reports disseminated in the community by defendants. As already shown, the reasons given by such customers for withdrawing their trade becomes in such cases proper evidence to go to the jury on the fact of injury and damage resulting from the acts of defendants. *Elmer* v. *Fessenden, supra, Cooke* v. *Weed,* (Conn.), 97 Atl. Rep. 769.

The second point of error urged for reversal is the giving to the jury of the eight several instructions propounded by plaintiffs' counsel. We have examined these, and so far as we observe they propound correctly the law applicable to the facts in the case. The main criticism of defendant's counsel is that the first and fourth are amenable to the law against assumption of the facts in controversy, and for not submitting the facts to the jury. The first defines conspiracy and does submit to the jury the question of fact on the evidence. The fourth instruction assumes no fact as proven, but submits to the jury the question of the fact of conspiracy or

combination by defendants. And as applying to all the instructions it is complained that the evidence did not justify the giving of any of them to the jury because, as counsel contend, no evidence was offered to justify them. As already indicated, we think they were all warranted by the facts proven.

The third point of error assigned is the denial by the court of instructions numbered 8, 9, 10, 17 and 20 proposed by defendants' counsel, the only ones rejected out of the twenty-five requested. Those given, it seems to us, cover every conceivable phase of the defendants' case, in some instances more liberally than they were entitled to; and for this reason, if for no other, those rejected were properly rejected. The eighth and ninth instructions were predicated on the theory that plaintiffs, between April 6, 1917, and May 26, 1918, and subsequently, made statements or gave expressions reasonably conveying to plaintiffs, or some of them, that they were sympathizers with the German government and were disloyal to the United States, and would have told the jury that if they so believed, the defendants had the right to give publication to such facts without rendering themselves liable to plaintiffs for any injury or damage resulting to them or their business or to their standing in the community. In the first place we find nothing in the evidence warranting the theory of plaintiffs' pro-Germanism or disloyalty. In the second place, their supposed pro-Germanism or disloyalty, if proven, would not have justified the false representations proven, that plaintiffs were engaged in introducing into their flour and meal ground glass and poison. These instructions were binding ones, and would have told the jury to find for defendants the facts assumed therein. Even after defendants were advised by the representative of the United States that their accusations were unfounded, the evidence shows that they did not cease from spreading the false reports.

The tenth instruction was properly rejected because it was predicated on the theory that customers of plaintiffs may have quit dealing with them without any reason and not by reason of anything said or done by defendants, or either of

them, and would have told them if they so found, they should find for defendants. True, one has the right to withdraw patronage from another's business without any cause, but he has no right to conspire with others to destroy his business, by circulating false reports concerning the same, and thereby to maliciously and wrongfully injure and damage him. *Leech* v. *Farmers Tobacco Warehouse Co.*, *supra*, syllabus, point 4, and authorities cited at page 797.

Instruction number 17 would have told the jury that the holding of meetings to ascertain who were pro-German and disloyal citizens and reporting their names to federal authorities did not constitute a conspiracy, and that if the jury found defendants, or any of them, had attended any such meeting, they were not guilty of any wrong of which plaintiffs could complain. This instruction was properly rejected; first, because it was covered by instruction number 15 given; and, second, because it does not state the whole of plaintiff's case. While the meeting and reporting the names of disloyal citizens would not constitute conspiracy, yet if, as the evidence shows, defendants at the same time conspired to destroy plaintiffs' business, and following the time of holding the meetings gave out false and scandalous reports as to the conduct of plaintiffs' business, doing the injury and damage, they would be liable therefor. This instruction, furthermore, was liable to mislead the jury as to the real issue in the case.

The twentieth instruction was rightly rejected for the reason, among other things, that it would have told the jury if they found from the evidence that plaintiffs were disloyal to the United States, and German sympathizers, they had the right, and it was their duty, to withdraw their patronage and induce others to do the same. As already stated, there was no evidence justifying the theory of such disloyalty and German sympathy, and besides, it was neither the duty nor the right of defendants by falsehood and deceit to do injury to plaintiffs' business and property.

The fourth, fifth and sixth grounds urged in support of defendants' motion for a new trial are: (a) that S. S. Web-

ster was not present at any of the meetings; and (b) that N. D. Webser, though present at one or two of these meetings, took no part in spreading the propoganda of his confederates. But S. S. Webster was shown to have been closely related to N. D. Webster and some of the other defendants, and to have been unfriendly to plaintiffs, and to have made false representations about the manufacturing of flour and feed by the plaintiffs for the United States, and engaged in spreading the pro-German talk about them, calculated to do injury to them. We think the evidence justified the jury in finding against the Websters as well as the other defendants. As already observed, the conspiracy charged was not the gist of the action, but the injury and damage done plaintiffs by false reports concerning them and their business.

The seventh, and last, ground assigned for reversal, not included in defendants' petition for the writ of error, but urged in the brief of their counsel, is that the declaration was insufficient; (1) because a conspiracy is not *per se* actionable; and (2) because the facts in furtherance of the alleged conspiracy were not set forth with certainty as required. Citing for this proposition 5 R. C. L. § 41, page 1090, and *Porter* v. *Mack, supra.* If there is any merit in this point, it was cured by the bill of particulars called for by defendants and actually filed by plaintiffs. This was good practice and answers the criticism that the cause of action was too generally stated. *Transportation Company* v. *Standard Oil Company,* 50 W. Va. 611, 622, point 5 of the syllabus.

Finding no substantial error in the rulings of the trial court, we are of opinion to affirm the judgment.

*Affirmed.*